Morning, Your Honor. William Broberg on behalf of the defendant appellant Efren Gallegos-Raymundo. Thank you very much for hearing me on his behalf this morning. This case involves a 3582C motion by the defendant appellant for a reduction in sentence. The district court entertained the motion, required a response from the government, and then granted a partial reduction in sentence based on what the defendant appellant was asking for of three months. But nowhere in the order doing it did the district court give any of its reasons for doing any of this besides a bare-bones form where they checked twice. And as we've submitted to the court, we believe there's a Sixth Circuit case called United States v. Howard that's instructive in exactly a situation like this. And in that case, the court there remanded for a statement of reasons, and one would believe that it was remanded so that one could then assess whether the district court found the applicable range, which we don't know from the order. We can infer from some of the documents that... Well, you can only get down three months to 63 in terms of the primary charge. And we don't have any reasons, but the district court did that. So my question is this. If we were to determine that the district court could not go any lower as a matter of law, would we still need to remand because we don't know what went through his head? Well, I would say yes. I would say that it is never harmless error not to put reasons that are required on the record. But I would also like to point out, and I think it's instructive on this point, because part of Your Honor's question was the government said that the district court couldn't go below three months. The government actually had a very different position in the district court. In fact, in their response, in two places, they said, quote, in this case, the court appears to possess the discretion to reduce defendant's sentence to a new combined term of not less than 63 months imprisonment. That's excerpts of record, page 25. Then again, it says, quote, for the reasons outlined above, the United States does not oppose defendant's motion for an amended judgment and concedes that the court could reduce his new sentence to a new not lower than 63 months and then imprisons combined as to all counts. So the position in the district court of the government is 180 degrees different than the position of the government in this court. So you think the government's position below was that the district court could have said 51 months on the drugs plus add 12 on the other charge, and that gets you to 63? Yes, I think that is the government's position. But the government, their quibble below was they didn't want the district court to go that far. They acknowledge, I don't think there's any other way to read their statements in their response, that the district court could go, could structure a sentence that way. If I might, let me understand maybe the original sentencing. As I understand the base offense level, right? Yes. And we arrived at a base offense level of 28, but then we made some adjustments. Yes. Some were lower, some were higher by going down and going up. We came up with a new base offense level, but it was 28, right? In those adjustments, it's my understanding that the court took into consideration that he had failed to appear. That was one of the reasons for some of the adjustment, right? Exactly. And so therefore, because he had failed to appear, the base level went up from 26 to 28, right? Exactly. So when the judge was trying to make the first sentence, he said to himself, okay, with a base level of 28 and a criminal history category of one, gives me a guideline range of 78 to 97, and he imposed 78. Yes. And in beginning to 78, he said, I'll use 66 months for the conspiracy and the distribution, and then I'll add the 12 months for the failure to appear, and that will give me to the lowest level of the guideline range, right? Yes. Now, if he had instead said, well, I'm going to start with 78 and add 12, wouldn't there be an argument for double counting? Yes. And isn't that exactly what he did the second time through? I mean, if in fact, we get to 63, he has raised the base level by the two points to get to 26. And therefore, he has used the same reasoning to get to his base level that the government now wants to use to have 12 months extra. And so therefore, we would have double counting, right? Yes. Now, my worry about this is that when I went through this, I don't know what the district court was thinking. Yes. Now, it may have been the district court was thinking, hey, I gave him 78. I thought 78 was good. And I don't think he deserves much less than 75. I just don't think he does. It doesn't matter what his base offense is. That's what he deserves. That may have been what he was saying, but I don't know because he doesn't tell me. Right. Or he may have missed this, that he was thinking about double counting the first time and didn't think about it the second time. And therefore, if he were to impose 12 above the 63, he might be subject to double counting error, correct? Correct. But we really don't know. We really don't know because he didn't say anything. And that's why I started with Howard. So let's take that as a given we don't know. Okay. But we also don't know that he was thinking what Judge Smith imputes to him. So therefore, we could be anything. So let me just ask you this because this goes to the legal question. It doesn't go to what the judge was thinking. Yes. Because we don't know. Correct. We don't know. So leaving aside what we don't know about what judge was thinking and you're looking then at the statutes, in your view, were there separate terms of imprisonment for the drug crimes and the failure to appear? Or does that become a single term of imprisonment under the grouping? Because that seems to me to be a legal question that the judge will have to figure out if it were to go back really rests on this legal question. I agree, Your Honor. And I also think the policy statement that we're involved with talks about a term of imprisonment over and over and over again. And it doesn't talk about a term of imprisonment on one count or another count. In this, you know, when the Sentencing Commission issued this amendment, they thought that it was going to have to deal with 40 some thousand people. They're very sophisticated. They know that lots of cases are going to involve situations like that are presented here. So I think they could have said except. But they're talking about a unitary kind of term of imprisonment. And in other parts of the guidelines also talk about how you reach a guideline sentence that's at the low end in a situation like this. The, for instance, pardon me just one second. For instance, the Obstruction of Justice Guideline and then the Commission of Offense While on Release Guidelines in the application notes give examples of how you get to a guideline sentence. And it can be this, this, consecutive, and then you reach the low end of the range, and they term it a guideline sentence. They call it a total punishment. Do it, does it matter? Here's another perplexing problem I found. You can shed some light on it. So when you go to the guidelines having to do with failure to appear, 2J1.6, the phrases that are used there are combined sentence and total punishment and not term of imprisonment. Do we, what's to make of the change in the language? Well, it's interesting because 2J1.6 is an interesting guideline except we go in it and it kicks us out again. We go in it and it says no, use the obstruction guideline. Group this offense with the underlying offense. So it's interesting but I'm not sure it's determinative. And here's a place where the government, and I have 17 seconds left, the government says their position here in this court is different. They talk a lot about 3146, which is the failure to appear statute, and 3146B, which is the penalty provision. In the government's response below, they talked about the sentence being commanded by 3147. And they have three pages of discussion in their response about 3147. But in the government submission here to this court, there's nothing about 3147. And the commentary to the commission of offense while on release statute gives an example, the last sentence of application note 1 says similarly if the applicable adjusted guideline range is 30 to 37 months and the court determines a total punishment in quotes of 30 months is appropriate, a sentence of 24 months for the underlying offense plus 6 months under 18 U.S.C. 3147 would satisfy this requirement when speaking about 3147 talking about a consecutive extra sentence. Well, I guess that's a good place to stop because now we can ask the government what they meant. Great. Thank you so much, Your Honor. Good morning. May it please the Court. Helen Bruner on behalf of the United States. Let me attempt to unpack this a little bit because I think there's a couple of things going on in this case that are somewhat unique or at least sufficiently unique that I could not find any case that had precisely this set of facts. We have a defendant who is convicted in three separate cases who's sentenced on the same day. The first is the 2008 drug conviction which carries a mandatory minimum 6-month term of imprisonment. Then we have the second, the failure to appear. And then we have the third, which is the new drug charge, which is the charge that results from his conduct while on fugitive status. And it's the interplay of these things that seem to be so troubling in this case. It's also clear that 3146 is the conviction. He was convicted of 18 U.S.C. 3146 for the failure to appear. He pled guilty and was separately sentenced for that. And that statute very specifically says in B-2 that any sentence imposed has to be consecutive to the underlying sentence. It is clear, I think, that the Court could have at the time of the original sentence determined that no term of imprisonment was appropriate for that conviction. But instead, Judge Robart did in fact impose a 12-month sentence. And that had to be consecutive. So where we are, where that leaves us is his new guideline range. And there's no doubt that the guidelines require that all of these sentences be considered, that the guideline range for all of these sentences be considered together because the sentencing was occurred at the same time. And what I mean by that is this explains the confusion over 2J1.6. If this defendant had been sentenced alone for the failure to appear, 2J1.6 would have been the basis for that calculation. That resulting total offense level would be 15. In fact, he stipulated to that in each of his three plea agreements. Maybe we could get to the heart of the question, and that is explain why in your view the judge couldn't sentence on the resentencing to 51 plus the 12. And whether in fact something within that province was something that the government conceded could be done when this was argued. Well, I think we certainly missed one essential point, and that is that the 60 months on count one was mandatory. So the only way that the court could have gone below, gotten to 63 months as the total sentence is to reduce the term on the failure to appear to three for the drug offense. So you said the mandatory sentence on the first count was 61 months? Sixty months. Sixty months. So in your mind, the judge could have gone down to 60 and given 60 to both of the 2008 and the 2013 charges and then added 12 to them? All I'm saying, Your Honor, is that I don't to the extent that there's only three ways that this could go, right? Well, what is the answer to my question, Counselor? I think that Could he have given 60 months? No, Your Honor. I think not, because I think the failure to appear should be considered separately. Well, you think, but you haven't given me any statute or any something that suggests it. My worry about this is, as I tried to explain to Counsel, it seems to me that the judge took into consideration this failure to appear in setting the base offense level. He took it into consideration in setting the base offense level at 28. He took it into consideration in setting the base level at 26. And if, in fact, he took it into consideration if you're going to give 12 months plus on that, it seems to me one could argue this is double counting. I would respectfully disagree, Your Honor, because I don't think it is double counting where the court actually considered, the court was required, obviously, to consider the separate conviction for the failure to appear. That was the two-level enhancement that he received for obstruction. And once he gets that in and he raises his guideline range as a result of that, it seems to me that there are at least good precedent, a good argument in cases to suggest if you add 12 months to that, you're double counting. But, Your Honor, the reason why it isn't double counting is because his original guideline range was 78 to 97 months. And the total sentence that the court imposed was 78 months. This isn't the original now. We're now at the second, which is 63 to 78. Yes, Your Honor. And in terms of the failure to appear, the only thing that's changed here is that the drug sentence has been reduced. Let's stop there, just to figure out what can and can't be done if this were to be remanded. Since this comes here as a result of the commission's reduction on the drug crimes, am I correct that when it goes back, nothing can be done with the failure to appear sentence? Or can it be? That would be the government's position. But in answer to the court's question, I think what the district court would be limited to is a total reduction, to the extent that the court disagrees with my position, a total reduction of 63 months. And the only way that the court could get there, then, is to put the mandatory minimum, 60, on the 2008 offense and then reduce the failure to appear to 3 months, or give 63 months. You're saying, though, if it goes back, that the judge would have the ability to change the failure to appear amount, and if what he had in mind is that I wanted to get to the bottom of the guideline range, which we don't know, and he wanted to get to 63, you're saying it would be okay for him to go 60 plus 3, and then he would have 63? Yes, Your Honor. It would be legally permissible? Your Honor, yes, to the extent that he could reduce the failure to appear. I would suggest, Your Honor, that it is the interesting question in this case whether or not the court actually could reduce that failure to appear. Well, that was my question. Do you have any authority that says he can or can't?  If we sent it back, I mean, do you also agree that we don't have any idea why he did what he did? I think we can only infer from the fact that he chose to reduce the sentences for the two drug cases to the low end of the guideline range, and then left the failure to appear sentence in place, that that was his intention, that the failure to appear did not, was not affected by the reduction in the drug guideline, and he was taking that into account. I think you can infer that. I don't, but I would only say infer because he did not express it directly. There's also a section 1B1.10, which I think factors into this. That's the section that directs the court to attempt to impose the sentence it would have imposed had the relevant amendment been in effect at the time of the initial sentencing. It comes out of Dillon versus the United States. It seems to me, at that point, if that's what the judge is supposed to do with this given motion, and all the parties agree that the defendant's sentence satisfies the first step of the motion, then at that point, I have a tough time with us unless there's some legal argument you can make to me to make a decision in this case without a remand. Your Honor, to be clear, I mean, I've read that aspect of the guideline. I think I certainly could argue that you could parse these things because the court very clearly thought that the failure to appear was something that should be punished separately and that 12 months should apply. But having said that, I would be remiss in not acknowledging that the way the guidelines calculate this, they, of course, calculate this as one total guideline range that the court then apportions. But it is clear that the district court at the time of the original sentencing did parse out that 12 months and then considered 66 months as appropriate for the two drug offenses. But can I infer that the government isn't really opposing a remand here? Well, Your Honor, to the extent that the judge has not explained the basis for the sentence and the court believes that the 12 months cannot be separately, should not be, can be reduced, shall I put it that way, then I think you do have to remand because the district court has not expressed why he parsed it the way he did, other than I think it can be inferred. You may have a minute if you need it. Unless the court has any questions. I have no questions. Okay, so thank you very much. I think we've come to the end of where we were going. Right. Thank you. A denouement, as they like to say in French. All right. We appreciate the arguments from both counsel and the candor. United States v. Gallegos-Ramundo is submitted.
judges: McKeown, Bea, N.R. Smith